## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Grant Van Orden, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>Hikari Sales U.S.A., Inc.,<br><br>　　　　　　　　　Defendant | Class Action Complaint   1:22-cv-00504 (MAD/DJS)<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.　　Hikari Sales U.S.A., Inc. ("Defendant") sells algae wafers promoted as "Ideal for Algae Eaters," which "[C]ontains Pure-Cultured Spirulina" under the Hikari brand ("Product").



2. The description includes a clear panel displaying a green "Wafer Shaped Algae Disc," "A Perfect Balance of Vegetables & Proteins," Natural Green Color From Multiple Beneficial Algaes," and "Vegetable Rich Wafer."

3. The label features two hypostomus plecostomus or "plecos," a type of suckermouth catfish, with the claim it is the "#1 Selling Plecostomus Diet Worldwide."

4. The pleco's diet is plant-based, from algae, vegetables, wood and biofilm, but also can include small crustaceans.

5. Algae is defined as mainly aquatic, eukaryotic organisms ranging from microscopic single-celled forms to multicellular forms, distinguished from plants by the absence of roots, stems, and leaves.

6. Despite the representations the Product will consist exclusively or predominantly of algae, with a non-de minimis amount of spirulina and vegetables, the primary ingredients are fish meal and starches.

**INGREDIENTS**
Fish meal, wheat flour, wheat germ meal, cassava starch, dried bakery product, dried seaweed meal, dehydrated alfalfa meal, alfalfa nutrient concentrate dehydrated, brewers dried yeast, soybean meal, fish oil, krill meal, spirulina, garlic, DL-methionine, chlorella, astaxanthin, choline chloride, vitamin E supplement, L-ascorbyl-2-polyphosphate (stabilized vitamin C), inositol, d-calcium pantothenate, riboflavin, vitamin A supplement, thiamine mononitrate, pyridoxine hydrochloride, niacin, folic acid, vitamin D3 supplement, biotin, disodium phosphate, ferrous sulfate, magnesium sulfate, zinc sulfate, manganese sulfate, copper sulfate, calcium iodate.

**INGREDIENTS:** Fish meal, wheat flour, wheat germ meal, cassava starch, dried bakery product, dried seaweed meal, dehydrated alfalfa meal, alfalfa nutrient concentrate dehydrated, brewers dried yeast, soybean meal, fish oil, krill meal, spirulina, garlic, DL-methionine, chlorella, astaxanthin, choline chloride, vitamin E supplement, L-ascorbyl-2-polyphosphate (stabilized vitamin C), inositol, d-calcium pantothenate, riboflavin, vitamin A supplement, thiamine mononitrate, pyridoxine hydrochloride, niacin, folic acid, vitamin D$_3$ supplement, biotin, disodium phosphate, ferrous sulfate, magnesium sulfate, zinc sulfate, manganese sulfate, copper sulfate, calcium iodate.

7. Fish meal, the most predominant ingredient, is a fish by-product and high in protein, that plecos do not require every day.

8. The second through fifth ingredients, "wheat flour, wheat germ meal, cassava starch, [and] dried bakery product," which are inconsistent with the pleco diet in their native habitat.

9. Fish meal and starch ingredients are known to cause digestive problems in plecos, leading to infection and greater risk of mortality.

10. The algae ingredients promised on the front label include "dried seaweed meal" and "spirulina," which are the sixth and thirteenth most-predominant ingredients, far less than the predominant fish meal and cereal ingredients.

11. Spirulina is valued for plecos because it has positive effects on immunity.

12. Plaintiff and consumers are misled because the term, "algae wafers," purports to identify significant features of the Product, that it consists of algae in a disc form, because that is what the label says and implies.

13. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

14. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

15. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

16. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

17. Had Plaintiff known the truth, he would not have bought the Product or would have

paid less for it.

18. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.99 per 0.70 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

19. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

20. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

21. Plaintiff Grant Van Orden is a citizen of New York.

22. Hikari Sales U.S.A., Inc. is a California corporation with a principal place of business in Hayward, Alameda County, California.

23. Defendant Hikari Sales U.S.A., Inc. is a California corporation with a principal place of business in Hayward, Alameda County, California.

24. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

25. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

26. The Product is available to consumers from third-party pet food stores and over the internet.

Parties

27. Plaintiff Grant Van Orden is a citizen of Halfmoon, Saratoga County, New York.

28. Defendant Hikari Sales U.S.A., Inc. is a California corporation with a principal place of business in Hayward, California, Alameda County.

29. Hikari is part of the preeminent, vertically-integrated Kamihata Group, founded in Japan in 1877.

30. Modern aquaculture was developed in Japan, through focus on the koi fish, a colorful descendant of traditional black carp.

31. The koi's ability to swim against strong currents and overcome great obstacles resulted in this type of fish being regarded as sacred in Japan.

32. By first developing methods and practices conducive to the health of koi fish, the Japanese fish industries achieved global preeminence.

33. Kyorin Food Industries Ltd., a major subsidiary of Kamihata, is a leading supplier of fish nutrition.

34. Hikari was created by Kyorin to apply its time-tested principles and advanced technologies to the consumer market.

35. The Product is available to consumers from third-party pet food stores and over the internet.

36. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Petco, 6 Halfmoon Crossing Blvd Halfmoon NY 12065-4171, between April 5, 2021, and September 5, 2021, and/or among other times.

37. Plaintiff believed and expected the Product was predominantly or exclusively made

5

from algae, with a non-de minimis amount of vegetable and spirulina ingredients because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

38. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

39. Plaintiff bought the Product at or exceeding the above-referenced price.

40. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

41. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

42. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

43. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

44. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar fish foods for plecos, because he is unsure whether those representations are truthful.

Class Allegations

45. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

>**New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

>**Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Montana, Virginia, New Mexico, Arkansas, Maine, Wyoming, North Dakota and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

46. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48. Plaintiff is an adequate representative because his interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

52. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

53. Plaintiff incorporates by reference all preceding paragraphs.

7

54. Plaintiff believed the Product was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

55. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

57. Plaintiff relied on the representations and omissions to believe the Product was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

58. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

59. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

61. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

62. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

63. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

### Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

64. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

65. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

66. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

67. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

68. Defendant's representations affirmed and promised that the Product was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

69. Defendant described the Product so Plaintiff believed it was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

70. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

71. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

72. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

73. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

74. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

75. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

76. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

77. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

78. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients, and he relied on Defendant's skill and judgment to select or furnish such a

suitable product.

79. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

80. Defendant had a duty to truthfully represent the Product, which it breached.

81. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

82. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

83. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

84. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

85. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

86. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

87. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was predominantly or exclusively made from algae, with a non-de minimis amount of vegetable and spirulina ingredients.

88. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

89. Defendant knew of the issues described here yet did not address them.

90. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

91. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: May 14, 2022

Respectfully submitted,

/s/Spencer Sheehan

Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com