UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GRANT VAN ORDEN, *individually and on behalf
of all others similarly situated*,

                                    Plaintiff,

    vs.                                                     1:22-cv-504
                                                            (MAD/DJS)

HIKARI SALES U.S.A., INC.,

                                    Defendant.
_____

APPEARANCES:                          OF COUNSEL:

SHEEHAN & ASSOCIATES, P.C.            SPENCER SHEEHAN, ESQ.
60 Cuttermill Road, Ste 412          KATHERINE LALOR, ESQ.
Great Neck, New York 11021
Attorneys for Plaintiff

PERKINS COIE LLP                      ADAM R. MANDELSBERG, ESQ.
1155 Avenue of the Americas – 22nd Floor
New York, New York 10036
Attorneys for Defendant

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Plaintiff commenced this class action on May 14, 2022, pursuant to the Class Action

Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). *See* Dkt. No. 1. Plaintiff asserts the

following claims on behalf of a putative class of consumers: (1) violation of the New York

General Business Law ("GBL") Sections 349 and 350; (2) breach of express warranty; (3) breach

of implied warranty of merchantability; (4) violation of the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301, *et seq.*; (5) negligent misrepresentations; (6) fraud; and (7) unjust enrichment. *See*

*id.* at ¶¶ 53-91.

On October 28, 2022, Defendant moved to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 15.  Plaintiff has opposed Defendant's motion.  For the reasons set forth below, Defendant's motion is granted.

## II. BACKGROUND

Hikari Sales U.S.A., Inc. ("Defendant") sells algae wafers promoted as "Ideal for Algae Eaters," which "Contains Pure-Cultured Spirulina" under the Hikari brand (the "Product").  *See* Dkt. No. 1 at ¶ 1.  The description includes a clear panel displaying a green "Wafer Shaped Algae Disc," and it claims to be "A Perfect Balance of Vegetable & Proteins," that it has a "Natural Green Color From Multiple Beneficial Algaes," and that it is a "Vegetable Rich Wafer." *Id.* at ¶ 2. The label features two hypostomus plecostomus or "plecos," a type of suckermouth catfish, with the claim it is the "#1 Selling Plecostomus Diet Worldwide." *Id.* at ¶ 3.  The pleco's diet is plant-based, from algae, vegetables, wood and biofilm, but also can include small crustaceans.  *See id.* at ¶ 4.

Algae is defined as mainly aquatic, eukaryotic organisms ranging from microscopic single-celled forms to multicellular forms, distinguished from plants by the absence of roots, stems, and leaves.  *See id.* at ¶ 5.  According to the complaint, "[d]espite the representations the Product will consist exclusively or predominantly of algae, with a non-de minimis amount of spirulina and vegetables, the primary ingredients are fish meal and starches." *Id.* at ¶ 6.  Plaintiff claims that fish meal, the most predominant ingredient, is a fish by-product and high in protein, that plecos do not require every day.  *See id.* at ¶ 7.  The second through fifth ingredients are "wheat flour, wheat germs meal, cassava starch, [and] dried bakery product," which are inconsistent with the pleco diet in their native habitat.  *See id.* at ¶ 8.  Additionally, fish meal and starch ingredients are known to cause digestive problems in plecos, leading to infection and

greater risk of mortality. *See id.* at ¶ 9.  "The algae ingredients promised on the front label include 'dried seaweed meal' and 'spirulina,' which are the sixth and thirteenth most-predominant ingredients, far less than the predominant fish meal and cereal ingredients." *Id.* at ¶ 10.  Spirulina is valued for plecos because it has positive effects on immunity.  *See id.* at ¶ 11.

Plaintiff claims that he and "other consumers are misled because the term, 'algae wafers,' purports to identify significant features of the Product, that it consists of algae in a disc form, because that is what the label says and implies." Dkt. No. 1 at ¶ 12.  Plaintiff also claims that Defendant makes other representations and omissions with respect to the Product which are false and misleading.  *See id.* at ¶ 13.

Plaintiff claims that the value of the Product that he purchased was materially less than its value as represented by Defendant.  *See id.* at ¶ 15.  Additionally, Plaintiff claims that Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.  *See id.* at ¶ 16.  Had Plaintiff known the truth, he would not have bought the Product or would have paid less for it. *See id.* at ¶ 17.  "As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than ... $4.99 per 0.70 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." *Id.* at ¶ 18.

## III. DISCUSSION

### A.      Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-

pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

Finally, fraud claims — including common law fraud claims — are subject to the heightened pleading standard set forth in Rule 9(b). *See Matana v. Merkin*, 957 F. Supp. 2d 473,

484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)") (collecting cases).  Rule 9(b) provides as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176-77 (2d Cir. 2015)).

**B.    General Business Law**

In its motion, Defendant contends that Plaintiff's claims under the New York General Business Law should be dismissed because the complaint fails to allege a non-conclusory factual basis for his contention that the Product's labeling is misleading.  *See* Dkt. No. 15-1 at 11-17.  In response, Plaintiff argues that, although the label is "factually true," the Court must "consider the 'entire mosaic' of an advertisement and its ultimate impression on the view, as opposed to literal truth or falsity" when considering this claim.  *See* Dkt. No. 16 at 8-10.  In context, Plaintiff contends that the Product's label "overstates the presence of algae," which is deceptive.  *See id.*

New York General Business Law ("GBL") Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in

this state." N.Y. Gen. Bus. L. § 349.  Additionally, Section 350 of the statute prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 350.  To state a claim under either section, a plaintiff must show "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 940 (2012)) (internal quotations omitted).  In the context of a motion to dismiss, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have mislead a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("A court may make this determination as a matter of law, although usually such a determination is a question of fact") (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

"New York courts apply an objective definition of deceptive acts and practices, concerned only with 'those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (quoting *Oswego Laborers*, 85 N.Y.2d at 26).  "Accordingly, plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Jessani v. Monini North America, Inc.*, 744 Fed. Appx. 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  Instead, "[p]laintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.*

"In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 8 F. Supp. 3d at 742.  Courts examining misleading product claims often rely on common sense observations and judicial experience.  *See e.g., Weinstein*, 819 F. Supp. 2d at 228 (stating that "*Iqbal* directs the Court to apply its common sense when determining the plausibility of a claim—common sense dictates that no reasonable consumer could plausibly think that StubHub tickets come directly from the Yankees") (citation omitted); *Warren v. Coca-Cola Co.*, No. 22-CV-6907, 2023 WL 3055196, *1 (S.D.N.Y. Apr. 21, 2023) (rejecting challenge to "hard" seltzer product containing no distilled spirits and noting that "had [the plaintiff] lived in New York for any length of time, she would know that cocktails containing hard liquor are not and cannot be sold in grocery stores").

In the present matter, Plaintiff claims that the Product's front packaging depicting a green "wafer shaped algae disc," combined with descriptions — "A Perfect Balance of Vegetables & Proteins," "Natural Green Color From Multiple Beneficial Algaes," and "Vegetable Rich Wafer" — is misleading.  *See* Dkt. No. 1 at ¶ 1.  While Plaintiff does not dispute that the Product in fact contains multiple types of algae or that the wafers constitute a balance of vegetables and proteins, Plaintiff nonetheless insists that the Product's labeling mis-represents the amount of algae relative to other ingredients.  *See* Dkt. No. 1 at ¶¶ 54-55.

As Defendant notes, the foundational flaw in Plaintiff's theory is that the Product's label plainly does not represent that the wafers (1) contain no ingredients other than algae, (2) contain a specific amount of algae, or (3) include only a *de minimis* amount of non-algae ingredients.  The Product label merely states that the wafers include "multiple beneficial algaes," as the complaint concedes.  *See id.* at ¶¶ 1, 6 (identifying dried seaweed meal, chlorella, and spirulina in the ingredient list).  Courts routinely dismiss GBL claims where, as here, the plaintiff "alleges that a

consumer will read a true statement on a package and will then ... assume things about the products other than what the statement actually says." *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, *3 (C.D. Cal. Oct. 25, 2012); *see also Rivas v. Hershey Co.*, No. 19-cv-3379, 2020 WL 4287272, *5 (E.D.N.Y. July 27, 2020) (dismissing consumer fraud claim alleging that Kit Kat White bars falsely suggested that they contained white chocolate, since a "reasonable consumer would not be misled into believing that the wafer are dipped in white chocolate when the packaging does not mention chocolate").

Courts in the Second Circuit have consistently held that highlighting the presence of one ingredient on a product label does not imply the exclusion of other ingredients and, therefore, cannot predicate a claim for false labeling.  In *Solak v. Hain Celestial Group, Inc.*, No. 17-cv-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018), for example, the plaintiffs alleged that the defendant's "Garden Veggie Straws" were misleading because the product label, which "contain[ed] a picture of a fresh tomato, a fresh potato, and fresh spinach," "create[d] the erroneous impression that the whole vegetables depicted in Defendant's Product's marketing and labeling are present in an amount greater than is actually the case." *Id.* at *1-2.  In granting the defendant's motion to dismiss, the court concluded that because the Veggie Straws contained "byproduct of vegetables ... it is in no way misleading for Defendant to call the Product 'Veggie' straws, since that label truthfully captures the fact that Defendant uses vegetable-based products in the Straws' recipe" and "presents the consumer with a factually true statement." *Id.* at *3.  The court therefore concluded that the phrase "Garden Veggie Straws" was a "factually accurate representation," which "captures precisely the nature of the Product on offer and is not an actionable misrepresentation." *Id.* at *4.

Likewise, in *Brown v. Kellogg Sales Co.*, No. 1:20-cv-7283, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022), a case brought by Plaintiff's counsel, the plaintiff alleged that the defendant mislabeled its "Frosted Strawberry Pop-Tarts" because the label's strawberry-themed imagery exaggerated the amount of strawberries in the filling and failed to disclose that the product also contained non-strawberry fruit (*i.e.*, apples and pears). *See id.* at *1. Dismissing the plaintiff's claims under GBL Sections 349 and 350 with prejudice at the pleading stage, the court held that no reasonable consumer would interpret "images of a half of a fresh strawberry and the dark red fruit filling on the front of the label of 'Frosted Strawberry Pop-Tarts'" to mean that "the [strawberries are] present in a particular form or not mixed with other ingredients." *Id.* at *3-4; *see also Chiappetta v. Kellogg Sales Co.*, No. 21-cv-3545, 2022 WL 602505, *4 (N.D. Ill. Mar. 1, 2022) (dismissing the plaintiff's deceptive labeling claim brought by Sheehan & Associates, holding that "no reasonable consumer could conclude that the filling contains a certain amount of strawberries based on the package's images and its use of the term 'Strawberry'"); *Russett v. Kellogg Sales Co.*, No. 7:21-cv-8572, 2022 WL 2789837, *3-4 (S.D.N.Y. July 15, 2022) (same).

In *Kennedy v. Mondelez Global LLC*, No. 19-cv-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020), also brought by Sheehan & Associates, the plaintiff alleged that the statements "made with real honey," "Honey Maid," and "no high fructose corn syrup," as used on the labeling of graham crackers, were misleading. *See id.* at *11. The plaintiff alleged that the statements were misleading because they suggested that "honey is the only sweetner used, that only pure honey (not a honey-blend) is used, ... and that honey is the exclusive or predominant sweetner." *Id.* The court concluded that the statements on the label were "factually true" and that they "provide no basis for a reasonable consumer to make any of the inferences that Plaintiffs allege are misleading." *Id.* at *12. "[A]t the end of the day," the court concluded, "Plaintiffs do not dispute

that real honey is actually added or that any of the honey representations are false, and the Court cannot conclude that reasonable consumers would be misled intro drawing the inferences Plaintiffs wish to draw from the statement 'made with real honey.'" *Id.* at *13.

Here, as in the cases cited above, no reasonable consumer would glean from the Product label that algae is the exclusive ingredient in the Product, or that it is present in an amount greater than that identified in the ingredient list on the label. *See Brown*, 2022 WL 992627, at *4 (finding no deception because "[t]here is also no 'only' or 'exclusively' modifier before the phrase 'Strawberry'"); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (dismissing the plaintiff's GBL claims where "[t]here is no 'only' or 'exclusively' modifier before 'cold-pressed' to indicate that the juice has been subjected to no other process"); *Harris v. Mondelez Global LLC*, No. 19-cv-2249, 2020 WL 4336390, *3 (E.D.N.Y. July 28, 2020) (same).  Indeed, the Product's label explicitly states the opposite: that the Product consists of a "balance" of ingredients, including vegetables, proteins, and "pure-cultured spirulina [algae]." Dkt. No. 1 at ¶ 1.  Plaintiff does not (and cannot) dispute that "multiple beneficial algaes" are actually present in the Product.  *See id.*  Absent any representation whatsoever that the Product contains a specific amount of algae (let alone a mis-representation), Plaintiff cannot plausibly allege that Defendant's labeling would mislead a reasonable consumer.

Even assuming that the front label of the Product created some ambiguity as to the wafer's ingredients (which it does not), any such ambiguity is resolved when the package as a whole is considered.  As stated above, the Product's front packaging makes clear that the wafers are not "exclusively" or "predominantly" composed of algae but rather contain a "balance of vegetables & proteins." Dkt. No. 1 at ¶ 1.  The "Features" section on the rear label reiterates the composition of the Product: "a perfect balance of premium-select ingredients developed to promote proper

growth and desirable form in the most herbivorous species." Dkt. No. 12-2.  The Product's label

also includes a "Guaranteed Analysis," including the approximate nutritional composition for

each wafer.  *See id.*  The packaging in its totality, thus, makes abundantly clear that the wafers

contain non-algal ingredients.

Moreover, even if the Product's labeling created some ambiguity as to the amount of algae

relative to other ingredients (which it does not), that ambiguity is resolved by reference to the

label's ingredient list.  Where, as here, a label contains no affirmative misrepresentations, "any

potential ambiguity could be resolved by the back panel of the products, which listed all

ingredients in order of predominance, as required by the FDA." *Workman v. Plum Inc.*, 141 F.

Supp. 3d 1032, 1035 (N.D. Cal. 2015); *see also Solak*, 2018 WL 1870474, at *6 ("To the extent

that the ambiguity inherent in the challenged representation(s) might give rise to confusion, the

rest of the Packaging would surely clear up any latent question").  The Product's ingredient list

clearly identifies all ingredients in order of predominance, including the algal components (dried

seaweed meal, chorella, and spirulina).  *See* Dkt. No. 1 at ¶ 6.  The label thus affirmatively

discloses that the Product contains various base ingredients, including vegetables, proteins, and

carbohydrates, in addition to the algae.  *See id.*  Upon review of the Product's ingredient list, no

reasonable consumer would share Plaintiff's subjective and idiosyncratic expectation that the

Product exclusively or predominantly contains algae.  *See Davis v. Hain Celestial Grp., Inc.*, 297

F. Supp. 3d 327, 337 (E.D.N.Y. 2018) ("The ingredient lists thus clarify – in exactly the spot

consumers are trained to look – that the premium ingredients are not the most predominant

ingredients.  No reasonable consumer could have been misled in light of this clarifying

language"); *Solak*, 2018 WL 1870474, at *5; *Workman*, 141 F. Supp. 3d at 1035 ("One can hardly

walk down the aisles of a supermarket without viewing large pictures depicting vegetable or fruit

flavors, when the products themselves are largely made up of a different base ingredient.  Every reasonable shopper knows that the devil is in the details").

Plaintiff relies on the Second Circuit's decision in *Mantikas v. Kellogg*, 910 F.3d 633 (2d Cir. 2018), for the proposition that "reasonable consumers should not be expected to consult the Nutrition Facts panel [or ingredient list] on the side of the box to correct misleading information set forth in large bold type on the front." *Id.* at 637.  However, the misleading labeling of the product in *Mantikas* read "made with whole grain" while the Nutrition Facts panel revealed that the product actually contained more white flour than whole wheat flour.  As described above, the Product labeling here contains no language — as contrasted with the "large bold type" in *Mantikas* — suggesting that the wafers contain exclusively or predominantly algae.  *See Angeles v. Nestle USA, Inc.*, 632 F. Supp. 3d 309, 316 (S.D.N.Y. 2022).

As Defendant correctly contends, when viewed in proper context, the Product's packaging provides numerous, clearly-labeled disclosures through which a reasonable consumer would easily discern the composition of the wafer.  Accordingly, the Court finds that Plaintiff's interpretation of the Product's labeling is unreasonable as a matter of law and the GBL claims are dismissed.

**C.    Violation of Other State Consumer Fraud Acts**

Plaintiff also brings a claim for violations of "Consumer Fraud Acts" of other unspecified states.  *See* Dkt. No. 1 at ¶¶ 59-63.  Plaintiff acknowledges that these consumer protection statutes are similar to his claims under GBL Sections 349 and 350.  *See id.* at ¶ 59.  Defendant contends that this claim is subject to dismissal because it fails under the reasonable consumer standard applicable to Plaintiff's GBL claim.  *See* Dkt. No. 15-1 at 17 n.5.  In his response to Defendant's

motion to dismiss, Plaintiff quibbles with the fact that Defendant raised its arguments in a footnote, but does not materially contest the point. *See* Dkt. No. 16 at 11.

Courts have previously surveyed consumer protection statutes from states across the country and have found that "the critical issue ... is whether a reasonable consumer would be misled by [a] [d]efendant's statement." *Harris v. Mondelez Global LLC*, No. 19-cv-2249, 2020 WL 4336390, *2 (E.D.N.Y. July 28, 2020) (citing cases). Here, Plaintiff provides no argument distinguishing his claims in these unidentified states from New York and this Court will not undertake that task for him. Accordingly, because this Court has already determined that the Product's labeling would not mislead a reasonable consumer, Plaintiff's consumer fraud multi-state class claims are dismissed.

**D.   Breach of Warranty (Magnuson-Moss Warranty Act)**

The Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.'" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)). Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). "To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Group, LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) (citing *Cooper v. Samsung Elecs. Am.*,

*Inc.*, 374 Fed. Appx. 250, 254 (3d Cir. 2010); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).

To state a claim for a breach of an express warranty in New York, the plaintiff must allege "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (citations and internal quotations omitted).  Notably, prior to commencing a breach of express warranty action, the buyer must provide the seller with timely written notice of the alleged breach.  *See* N.Y. U.C.C. § 2-607(3)(a) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").  The notice requirement is intended "to give the seller the opportunity to make adjustments or replacements," to minimize loss and liability, and "to give the seller a chance to prepare for negotiation and litigation." *Besicorp Group, Inc. v. Thermo Electron Corp.*, 981 F. Supp. 86, 101-02 (N.D.N.Y. 1997) (citations omitted).

As to breach of implied warranty claims, New York law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1).  "To be merchantable, goods 'must be ... fit for the ordinary purposes for which such goods are used; and ... conform to the promises or affirmations of fact made on the container or label if any.'" *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (quoting N.Y. U.C.C. § 2-314(2)).

Here, the Court finds that Plaintiff has failed to plausibly allege either an express or an implied breach of warranty claim.  First, Defendant argues that Plaintiff failed to provide notice

prior to commencing suit relative to the express warranty claim.  *See* Dkt. No. 15-1 at 20.  In response, Plaintiff contends that Defendant's "'pre-suit notice' argument fails because 'notice requirements for breaches of warranty have long been jettisoned in New York state' for retail sales nor is the specter of litigation mentioned in the statute." Dkt. No. 16 at 12.  While Plaintiff is correct that there is a "'line of New York cases suggesting that the notice requirement does not apply to retail sales,' ... numerous courts in the Second Circuit have explained that 'this exception appears to be exclusively applied where the party alleges physical, in addition to economic, injury.'" *Hoffman v. Kraft Heinz Foods Co.*, No. 22-cv-397, 2023 WL 1824795, *11 (S.D.N.Y. Feb. 7, 2023) (quotation and other citations omitted); *see also Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018) (collecting cases).  Since Plaintiff failed to provide pre-suit notice, Plaintiff's express warranty claim must be dismissed.

All of Plaintiff's warranty claims are also subject to dismissal because, as the Court has already determined, Plaintiff has failed to allege that the Product's labeling would likely deceive or mislead a reasonable consumer, which is fatal to his warranty claims.  *See Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 313 (S.D.N.Y. 2022) (holding that because the plaintiff "failed to allege that the product's labeling would be likely to deceive or mislead a reasonable consumer," the plaintiff's claims for negligent misrepresentation, breaches of express warranty, the implied warranty of merchantability, and the Magnuson-Moss Warranty Act, fraud, and unjust enrichment, must also be dismissed) (citing cases); *see also Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018), *aff'd sub nom. Axiom v. Florida's Nat. Growers, Inc.*, 813 Fed. Appx. 701 (2d Cir. 2020) (dismissing breach of express warranty claim where reasonable consumer would not be misled by representation).

Plaintiff's implied warranty claim and its statutory analogue under the Magnuson-Moss Warranty Act are also subject to dismissal on the alternative ground that Plaintiff failed to plausibly allege that the Product is unfit for its ordinary purpose, *i.e.*, plecostomus fish consumption. *See Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433-34 (2d Cir. 2013) (explaining that New York law "requires only that the goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for which such goods are used").

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's express and implied warranty claims.

E.     **Fraud**

"To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted).  Additionally, allegations of fraud must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).  The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

In the present matter, Plaintiff has failed to allege a materially false representation, a reasonable reliance, or an intention to defraud.  As previously discussed, there are no plausible

allegations of a materially false representation relative to Defendant's Product; it follows that Plaintiff has failed to plausibly allege reasonable reliance. *See Catholodi-Jankowski v. CVS Health Corp.*, ___ F. Supp. 3d ___, 2023 WL 2028926, *11 (W.D.N.Y. 2023) (citing cases); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018) ("For essentially the same reasons discussed regarding the material representation prong for the statutory claims, Plaintiff fails to plead reasonable reliance"); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016) ("But, for the same reasons that the § 349 claim fails, the fraud claim fails"). Finally, Plaintiff has provided only conclusory and boilerplate allegations as to Defendant's alleged fraudulent intent, which is insufficient to support his claim. *See* Dkt. No. 1 at ¶ 90 ("Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations").

Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiff's fraud claim.

**F.      Negligent Misrepresentation and Injunctive Relief**

In response to Defendant's motion, Plaintiff has "withdrawn his claims for injunctive relief and negligent misrepresentation." Dkt. No. 16 at 6 n.1. Accordingly, the Court deems these claims abandoned.

**G.      Unjust Enrichment**

In order to state a claim for unjust enrichment in New York, a plaintiff must plausibly allege that the defendant was (1) enriched; (2) at the expense of plaintiff; (3) under circumstances wherein equity and good conscience require the defendant to make restitution. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). While an unjust enrichment claim may be premised on deceptive conduct, "unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not

available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Brady v. Anker Innovations Limited*, No. 18-cv-11396, 2020 WL 158760, *12 (S.D.N.Y. Jan. 13, 2020) (dismissing unjust enrichment claim as duplicative of the plaintiff's claims of breach of express warranty and violation of N.Y. GBL §§ 349 and 350); *Gonzalez v. Costco Wholesale Corporation*, No. 16-cv-2590, 2018 WL 4783962, *10-11 (E.D.N.Y. Sept. 29, 2018) (dismissing unjust enrichment claim that is duplicative of the plaintiff's breach of warranty claims); *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017) (dismissing unjust enrichment clam that was based on the same allegations as the plaintiff's claims for violation of GBL §§ 349 and 350, fraudulent concealment, and intentional or negligent misrepresentation).

Here, Plaintiff's unjust enrichment claim relies on the same operative facts as his other claims. Thus, "to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for [Plaintiff's] unjust enrichment claim would necessarily crumble." *Brady*, 2020 WL 158760, at *12. Accordingly, Plaintiff's unjust enrichment claim is dismissed.

## H.    Final Thoughts

Setting aside this specific matter, Plaintiff's counsel, Spencer Sheehan, Esq. of Sheehan & Associates, P.C., has filed approximately 316 actions since 2021, at least 18 of which were filed in this District, and virtually all of which are class action lawsuits alleging that the packaging on a consumer product is false and misleading. *See Lumbra v. Suja Life, LLC*, No. 1:22-CV-893, 2023 WL 3687425, *1 (N.D.N.Y. May 26, 2023) (granting the defendant's motion to dismiss class action complaint for failing to state a claim that the labeling on Suja Organic Juice falsely represents that it is "cold-pressed"); *Greco v. TikTok, Inc.*, No. 5:22-cv-916, 2023 WL 3092861,

*4-6 (N.D.N.Y. Apr. 26, 2023) (granting the defendant's motion to dismiss class action complaint for lack of subject-matter jurisdiction).  Of those cases that have been considered in a dispositive motion in this District, none have proceeded past the motion to dismiss phase of litigation.  *See Brownell v. Starbucks Coffee Co.*, No. 5:22-CV-1199, 2023 WL 4489494, *8 (N.D.N.Y. July 12, 2023) (citing cases).  As Judge Scullin recently noted, Mr. Sheehan "repeatedly files class action lawsuits primarily pertaining to allegedly false labeling on consumer products – including causes of action for violations of GBL §§ 349 and 350 [and] breach of express and implied warranties ... – that plainly do not meet the pleading requirements for such claims on their faces.  Nonetheless, Mr. Sheehan continues to file these frivolous actions in violation of Rule 11(b)(2) of the Federal Rules of Civil Procedure." *Id.* (issuing order to show cause why Mr. Sheehan has not violated Rule 11(b)(2) and, if the court finds that a violation has occurred, why the court should not impose sanctions against him).

In reviewing Mr. Sheehan's long history of filing class action lawsuits, the Court is hard-pressed to find any recent case where a class was actually certified.[1]  Rather, Mr. Sheehan's practice appears to rely on businesses agreeing to quick settlements without bringing dispositive

---

[1] The Court notes that a class was certified in *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768, 2021 WL 3721392 (E.D.N.Y. July 7, 2021).  There, however, the beverage label at issue stated that the product was "MADE WITH AGED VANILLA," which the court found to be materially misleading where "the vanilla flavor [came] predominantly—if not exclusively—from ... ethyl vanillin." *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 96 (E.D.N.Y. 2020).  There, the court explained that "the use of the word 'aged' suggests to consumers that the vanilla content is naturally derived and has acquired a desirable quality upon the passage of time." *Id.* at 102.  "By holding out their products as containing 'aged vanilla,'" the court continued, "defendants' representation is the equivalent to stating the beverages are 'Made With Natural Vanilla.'" *Id.*  This early success seems to have encouraged Mr. Sheehan to find any and all labels misleading that contain the word "vanilla" or some similar flavor, regardless of whether those labels also contain qualifying words that would lead a reasonable consumer to believe that the flavor came from a specific source or in a specific quantity.  *See Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676-77 (S.D.N.Y. 2021) (discussing the various cases challenging the use of the term "vanilla" in food descriptions and advertisements brought by Mr. Sheehan and others).

motions, regardless of how frivolous the underlying claims may be, undoubtedly because the settlement amount is less than what it would cost to fight the claims. *See Matthews v. Polar Corp.*, No. 1:22-cv-649, Dkt. No. 36-1 (N.D. Ill.) (spread sheet filed by Mr. Sheehan listing his litigation history since 2021 and providing the outcomes of the cases, revealing that nearly all of his cases are dismissed by the court on a motion to dismiss or that they are voluntarily dismissed prior to dispositive motion practice). Mr. Sheehan has been warned on repeated occasions regarding his practice of filing lawsuits where the theory of the case was not close to viable, yet he continues to do so, undoubtedly because the cases that do settle are sufficiently lucrative that he is willing to provoke the ire of the judiciary. This practice is unfair to both the companies he sues and the judiciary that is left to sort through the nonsense.

In an interview with the New York Times discussing class action litigation involving false advertising and mislabeling cases, Mr. Sheehan gave the following statement justifying the proliferation of such cases: "False advertising is 'not going to cause injury or death, but it is nonetheless a deceptive practice,' ... 'What other remedy exists for consumers to say to a company like Godiva, "You shouldn't write on this 'Belgium 1926' without telling consumers that these chocolates are not made in Belgium?"'" Britta Lokting, *Lawyer Up: Class-Action Suits Are Thriving in New York*, THE NEW YORK TIMES, May 1, 2023, https://www.nytimes.com/2023/04/27/nyregion/class-action-lawsuits-nyc.html. The Court was struck by Mr. Sheehan's example. When the Court read "Belgium 1926" the Court immediately believed that this was in reference to the fact that Godiva was founded in Belgium in 1926 (which it was). Mr. Sheehan, on the other hand, presumes (unreasonably) that this is in fact meant to lead the consumer to believe that Godiva products are produced exclusively in Belgium.

Having reviewed a considerable number of Mr. Sheehan's more recent filings, the Court has come to conclude that only the most generic, mundane labels on consumer goods could pass muster under his litigious eye, *e.g.*, "Human Food."  Although Mr. Sheehan would still likely find fault with such a label if, for example, the "Human Food" product could also be fed to household pets.

Undoubtedly, it is just a matter of time before Mr. Sheehan brings suit against the maker of Skittles (the Wrigley Company) for the lack of rainbows actually present in the product, despite the promises made in their advertisements, *i.e.*, "Taste the Rainbow."  Consumer fraud class action litigation obviously plays an important role in protecting consumers from unscrupulous companies.  Recently, however, courts around the country have been inundated with a seemingly endless supply of trivial (bordering on frivolous) lawsuits, asking the courts to read the labels of consumer goods in manners that strain credulity or to simply ignore other relevant language provided on the labels.  The case before the Court here is one of many that should give pause to Mr. Sheehan and serve as a reminder that **CONTEXT MATTERS** and that a label should be read in its entirety.  *See Fink*, 714 F.3d at 742.  Reasonable consumers do not read words describing a product in isolation.  Rather, they read statements in the context of the label, advertisement, or website as a whole, and with an understanding of the product that they are purchasing.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 15) is **GRANTED** in its entirety for the reasons set forth herein; and the Court further

ORDERS that Plaintiff's complaint is **DISMISSED**; and the Court further

ORDERS that the Clerk of the Court shall enter judgment in Defendant's favor and close

this case; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 18, 2023
          Albany, New York

Mae A. D'Agostino
U.S. District Judge